IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIDA TORRES and EDWIN TORRES, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | No. 09-cv-0178 |
| CONTROL BUILDING SERVICES, et al., | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                                                 **February 16, 2010**

This dispute has been brought before the Court on Defendants Rita's Water Ice Real Estate Company and Rita's Real Estate Franchise Company's Motion for Summary Judgment (Doc. No. 34) and Defendants Lincoln Plaza Associates and Control Building Services' Motion for Summary Judgment (Doc. No. 35). For the reasons set forth below, the Rita's entities' Motion shall be GRANTED, and Lincoln Plaza Associates and Control Building Services' Motion shall be GRANTED in part and DENIED in part.

**Background**

Plaintiffs are husband and wife currently living in Stockbridge, Georgia. On Saturday, February 24, 2007, Plaintiffs were shopping at the Oxford Valley Mall, in Langhorne, Pennsylvania, which is owned and operated by Defendant Lincoln Plaza Associates. After doing some shopping, Plaintiffs moved to the food court of the mall, sometime around 5:30 or 6:00 P.M.

1

While walking approximately 15 feet from the Rita's Water Ice kiosk, at that time owned by Rita's Water Ice Oxford Valley Mall, but subsequently taken over by Defendant Rita's Water Ice Real Estate Company, Plaintiff Aida Torres suddenly slipped and fell. When Plaintiff hit the ground she noticed that there was spilled ice cream on the floor that was partially melted.  Although a portion of the ice cream was still solid and still had some sort of red topping covering it, enough of the ice cream had melted so that it covered Plaintiff's clothing and soaked through her sock, and Plaintiff states that the melted ice cream was still cold. Following the accident, Plaintiff Aida Torres alleges that she suffered several injuries; she hurt her knee, elbow, and lower back, and asserts that the injuries to her knee and lower back continue to cause her pain and discomfort.  Plaintiff Edwin Torres also seeks damages for loss of consortium, alleging that he has lost the comfort, society, and companionship of his wife.

Plaintiffs assert that these injuries were suffered due to Defendants' negligence.  This charge is brought against Lincoln Plaza Associates, the owner of the mall, Control Building Services, the company in charge of cleaning the mall, Rita's Water Ice Real Estate Company, the operator of the Rita's kiosk outside of which Plaintiff fell, and Rita's Water Ice Franchise Company, the Rita's corporate entity in charge of franchising operations.  Plaintiffs assert two alternative theories of

liability.  First, they allege that Defendants were liable for failing to remedy the dangerous condition created by this specific ice cream spill.  Second, Plaintiffs allege that Defendants were liable for not putting better safety precautions in place to prevent harm from dangerous conditions created by third parties.[1]  Although Defendants do not agree about who owed the duty to Plaintiffs in this situation, they all contest that they had notice of the dangerous condition, and, therefore, urge this Court to find that none of them were negligent.  Further, Defendants maintain that adequate safety precautions were in place to protect patrons from dangerous conditions, and that summary judgment is also appropriate on that issue.

## Standard

When a party files for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In making a summary judgment determination, all inferences must be viewed in the light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

---

[1] Although this distinction is not entirely clear in Plaintiffs' Amended Complaint, the Amended Complaint does contain allegations that are appropriately grouped under these two theories of negligence and it is on these grounds that Plaintiffs defend against Defendants' Motions for Summary Judgment.  This Court, therefore, will treat Plaintiffs' Amended Complaint as raising causes of action under these two distinct theories of negligence.

3

475 U.S. 574, 587 (1986).  In order to survive a motion for summary judgment, the non-moving party cannot rely solely on the unsupported allegations found in the pleadings.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, the non-moving party must raise more than "some metaphysical doubt" as to a material fact.  Matsushita, 475 U.S. at 586.  In making a decision as to whether there is a "genuine" issue of fact, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## Discussion

As this case is in federal court on diversity jurisdiction, we will apply Pennsylvania law to this dispute.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).[2]  To prevail on a negligence claim under Pennsylvania law, the plaintiff must establish that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached this duty, and that this breach caused an injury to the plaintiff.  Macina v. McAdams, 421 A.2d 432, 434 (Pa. Super. Ct. 1980).  In premises liability

---

[2]This includes Pennsylvania's choice of law, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), which, in tort cases is to combine the "government interest" analysis with the "significant relationship" analysis. Kirschbaum v. WRGSB Assocs., 243 F.3d 145, 151 (3d Cir. 2001).  Neither party argues that a law other than Pennsylvania's should apply, and as the accident occurred in Pennsylvania and it is Pennsylvania's laws that apply to Defendants' operations, it is Pennsylvania that has both an interest in and a significant relationship with the accident, and Pennsylvania's tort law will, therefore, apply.

4

cases, the applicable standard of care depends on the status of the guest. <u>Carrender v. Fitterer</u>, 469 A.2d 120, 123 (Pa. 1983). When a person is invited to the land "for a purpose directly or indirectly connected with business dealings with the possessor of the land," that person is considered an invitee. Restatement (Second) of Torts § 332 (1965).[3] A landowner must protect an invitee from foreseeable harm, meaning that the duty to protect only arises in circumstances where the landowner knows, or should know, of a dangerous condition on the land that poses an unreasonable risk that the invitee would not be expected to discover. <u>Carrender</u>, 469 A.2d at 123. In such situations, the landowner must exercise reasonable care to protect the invitee. <u>Id.</u> A landowner, therefore, has no duty to protect or warn against obvious dangers that would be noticed by a reasonable invitee exercising normal perception. <u>Id.</u> Further, as the duty only arises if the landowner knew or should have known of the dangerous condition, no finding of negligence can be made unless there is first a finding that the landowner had actual or constructive notice of the condition. <u>Estate of Swift v. Ne. Hosp. of Phila.</u>, 690 A.2d 719, 722 (Pa. Super. Ct. 1997).

Actual notice is "notice given directly to, or received personally by, a party." Black's Law Dictionary (8th ed. 2004). In other words, the plaintiff must demonstrate that the defendant

---

[3] Pennsylvania has adopted the Restatement (Second) of Torts for premises liability cases. <u>Carrender</u>, 469 A.2d at 123.

knew of the dangerous condition and not merely that the defendant should have known of the condition. Constructive notice, on the other hand, is "notice presumed by law to have been acquired by a person and thus imputed to that person." Id. In determining constructive notice, courts consider a number of factors, including the number of people on the premises, the type of dangerous condition, the location of the dangerous condition, the cause of the condition, and whether the defendant had an opportunity to fix the condition. Craig v. Franklin Mills Assocs., 555 F. Supp. 2d 547, 549-50 (E.D. Pa. 2008). The time between the creation of the unsafe condition and the accident, however, is one of the most important factors for the court to consider. Neve v. Insalaco's, 771 A.2d 786, 791 (Pa. Super. Ct. 2001).

Although, as a general matter, it is permissible for a plaintiff to use circumstantial evidence to establish negligence, Miller v. Hickey, 81 A.2d 910, 914 (Pa. 1951), a court cannot allow a case to continue to trial if the jury would be required to rely upon "conjecture, guess or suspicion" to establish constructive notice. Craig, 555 F. Supp. 2d at 550 (citing Lanni v. Pa. R.R. Co., 88 A.2d 887, 889 (Pa. 1952)). Indeed,

> [w]here . . . the evidence indicates that the transitory condition is traceable to persons other than those for whom the owner is . . . ordinarily accountable, the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice

6

of the condition or that the condition existed for such
a length of time that in the exercise of reasonable
care the owner should have known of it.

Moultrey v. Great A&P Tea Co., 422 A.2d 593, 596 (Pa. Super. Ct. 1980).

## § 343

As noted above, Plaintiffs bring their claims for negligence both under the Restatement (Second) of Torts § 343, alleging that Defendants were negligent for failing to fix the specific unsafe condition at issue in this case, and under the Restatement (Second) of Torts § 344, alleging that this event recurred so often that Defendants had a duty to remedy or warn of the dangerous condition. We will begin by addressing Plaintiffs' claim under § 343. Plaintiffs' claims under § 343 must fail as they have not established that any Defendant had notice of the dangerous condition. As an initial matter, Plaintiffs have not even alleged that any Defendant had actual notice of the condition. Plaintiffs introduce no evidence to support a finding that any Defendant was aware of this particular spill. Plaintiffs only claim that Defendants should have known about the dangerous condition at issue here, and that is insufficient to establish actual notice for the purposes of liability under § 343.

Plaintiffs also fail to establish constructive notice of the dangerous condition. Plaintiffs seek to establish constructive

7

notice by relying solely on the location of the spill and the length of time that the ice cream remained on the floor. Although the location of the spill—in close proximity to a kiosk in the food court during a busy time on a busy day—lessens the amount of time that the spill needs to be on the floor before Defendants had constructive notice, this location alone does not put Defendants on immediate notice of every spill. In order to establish constructive notice, Plaintiffs still must provide at least some evidence as to the duration of the spill. Plaintiffs state that they had no conversation with any employee or bystander about the amount of time that the ice cream remained on the floor, nor did they overhear any conversations take place. In addition, Plaintiffs do not mention any tracking through the melted ice cream or the presence of any dirt or garbage in the spill. See Read v. Sam's Club, No. 05-170, 2005 WL 2346112, at *2 (E.D. Pa. Sept. 23, 2005) (noting that a lack of tracking or accumulation of debris suggests that the spill has not remained on the floor long enough to provide constructive notice). Rather, Plaintiffs only note that the ice cream was partially melted, and that there was enough liquid to soak through Plaintiff's sock and to be all over her clothing.

Although Plaintiffs' evidence could be consistent with a purchase from Rita's being spilled on the floor and remaining there for a period long enough to allow it to start to melt, this

is certainly not the only conclusion that can be drawn from the evidence, and requires a great deal of conjecture or speculation. Four of the food-court vendors sold ice cream, and the location of the spill was such that many individuals walking from the food court to the main portion of the mall would have walked by the spot where the accident occurred. It is, therefore, possible that a patron purchased ice cream from another store, walked around the food court as it melted, and then spilled it immediately before the accident; or a patron could have sat at a table while eating, allowing the ice cream to begin to melt, and have dropped the partially melted ice cream on his or her way out of the food court area. In other words, the fact that the ice cream was partially melted does not necessarily relate to the length of time that the spill was on the floor. There is simply no evidence introduced by Plaintiffs that can establish, without resorting to speculation, the amount of time that the ice cream remained on the floor. Instead, all of Plaintiffs' evidence simply establishes that a period of time had passed since the ice cream was purchased. Plaintiffs, therefore, have introduced evidence that would allow a jury to conclude that the amount of time required before Defendants had constructive notice was minimal, but have not introduced any evidence to allow a jury to find how long of a period of time the dangerous condition actually existed. Under these circumstances, Plaintiffs have not

introduced evidence that could allow a reasonable jury to find in their favor on the issue of constructive notice, and a genuine issue of material fact does not remain on this issue.[4]

Although Plaintiffs emphasize that the mall was extremely busy at the time of the accident, they provide no evidence that there were any footprints leading away from the puddle or any debris in the ice cream itself. In addition, Plaintiffs have no evidence of any conversations with any individual regarding the length of the spill. Ultimately, Plaintiffs have provided only one fact about the amount of time that the spill was on the floor, and this fact is consistent with multiple other theories of the duration of the spill. In these circumstances, a jury would be required to resort to speculation or suspicion in order to find that Defendants had constructive notice, as would be required to render a verdict for Plaintiffs. As it is not permissible for this Court to allow the issue to proceed to trial in these circumstances, we must grant summary judgment for Defendants due to Plaintiffs' failure to establish that Defendants had notice of the dangerous condition.

---

[4] The parties spend extensive time arguing over whether the melted ice cream is more analogous to the spilled soda in Craig or the wilted lettuce in Kania v. Sbarro, Inc., No. 97-6863, 1998 WL 800320 (E.D. Pa. Nov. 13, 1998). We think that it is futile to attempt to decide whether melted ice cream is closer in nature to wilted lettuce or flat soda. Instead, our focus is on whether, given the nature of the spill and the product that has been spilled, a jury could make a determination, without resorting to conjecture, about the amount of time that the spill had been on the floor. In the present case, for the reasons set forth above, we find that a jury could not make this determination. There was, therefore, no constructive notice in this case, regardless of the relationship between spilled ice cream, soda, and lettuce.

## § 344

Plaintiffs' claims under § 344 are at least partially able to survive summary judgment.  Section 344 requires a landowner to "take reasonable precaution against harmful third party conduct that might be reasonably anticipated."  Rabutino v. Freedom State Realty Co., 809 A.2d 933, 939 (Pa. Super. Ct. 2002).  Plaintiffs claim that because spills were occurring in the food court "constantly," Defendants knew that third parties frequently created dangerous conditions in the food court and Defendants were under a duty to remedy the situation.  Plaintiffs further assert that having a single person on duty in the food court during an extremely busy period of time and relying on vendors to call in spills before they were cleaned are insufficient precautions under these circumstances, and make Defendants liable for any injury.  Defendants assert that the evidence introduced by Plaintiffs is insufficient to create a genuine issue of material fact, and argue that Plaintiffs' failure to introduce any expert testimony is fatal to their claim.

Given the status of the filings currently before this Court, summary judgment is not appropriate on this issue.  Whether a landowner has taken adequate precautions is a factual question that must be left for a jury to determine.  Rivera v. Phila. Theological Seminary of St. Charles Borromeo, Inc., 580 A.2d 1341, 1344 (Pa. Super. Ct. 1990).  In addition, expert testimony

is not required in all cases where a plaintiff has alleged that reasonable precautions were not taken. In cases where "the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons," expert testimony is not required. Chandler v. Cook, 265 A.2d 794, 796 n.1 (Pa. 1970); see also Ovitsky v. Capital City Econ. Dev. Corp., 846 A.2d 124, 126 (Pa. Super. Ct. 2004) (finding that an ordinary juror would not require expert testimony to determine whether a hotel had taken reasonable precautions to provide security for its patrons).

We believe that the present case is similar to cases involving insufficient hotel security, and that it can be expected that the majority of potential jurors would have experience with shopping in malls and eating in food courts, and could be expected to form a logical, principled opinion as to whether the landowner took reasonable precautions to prevent a foreseeable harm. Plaintiffs have submitted evidence that spills were "constantly" occurring in the food court and that on the night that the accident occurred Defendants were employing less than their normal cleaning staff. A jury could reasonably conclude that a single person assigned to monitor the food court on a busy night was insufficient, and that Defendants did not take reasonable precautions to protect invitees from dangerous

12

conditions created by third parties. There is, therefore, a genuine issue of material fact as to whether reasonable precautions were taken, and summary judgment is inappropriate.

Summary judgment on this issue, however, is only inappropriate as to the landowner, Lincoln Plaza Associates, and the independent contractor hired to clean the mall, Control Building Services. The duty to Plaintiffs in this case arises out of ownership of the land. It is Defendant Lincoln Plaza Associates that owns the land, and it, therefore, had a duty to Plaintiffs. In addition, the Restatement (Second) of Torts § 383 makes independent contractors liable to the same extent as a landowner, and Defendant Control Building Services, therefore, also owed a duty to Plaintiffs. There is no allegation, however, that either of the Rita's entities owned the land or was an independent contractor on the land in question, as it was not within the bounds of their lease. The Rita's entities, therefore, owed no duty to Plaintiffs to protect them from dangerous conditions created by third parties, and summary judgment is appropriate in favor of the Rita's Defendants.

Plaintiffs have introduced evidence that they were owed a duty by the landowners to be protected from dangerous conditions caused by third parties, that spills by other mall patrons should have been reasonably anticipated, that reasonable precautions were not taken to prevent injury, and that they did suffer an

13

injury that was caused by the failure to take reasonable precautions. This duty, however, was only owed by the landowner and independent contractors on the premises where the accident occurred. Because Defendants Rita's entities did not own the land nor were they independent contractors on the site of the accident, they owed no duty to Plaintiffs, and their Motion for Summary Judgment on this issue is granted. Genuine issues of material fact remain, however, as to Defendants Lincoln Plaza Associates and Control Building Services' liability, and their Motion for Summary Judgment must be denied on this issue.

**Loss of Consortium**

Loss of consortium is a derivative claim that cannot remain if summary judgment is granted on the underlying claim of negligence. Stipp v. Kim, 874 F. Supp. 663, 666 (E.D. Pa. 1995). Given that summary judgment has been granted to Defendants Rita's entities on Plaintiff Aida Torres's negligence claims, summary judgment must also be entered in these Defendants' favor on Plaintiff Edwin Torres's claim for loss of consortium. On the other hand, as Defendants Lincoln Plaza Associates and Control Building Services do not contest the factual basis for Plaintiff's damages pursuant to his loss of consortium claim, Plaintiff Edwin Torres's claims against these Defendants remain for trial.

## Conclusion

Plaintiffs did not establish that the Rita's entities had notice of the spill at issue, and did not establish that these Defendants owed a duty to protect them from third parties' negligence. Defendants Rita's Water Ice Real Estate Company and Rita's Real Estate Franchise Company's Motion for Summary Judgment, therefore, is granted, and judgment is entered in their favor on all claims brought by Plaintiffs against them. Defendants Lincoln Plaza Associates and Control Building Services' Motion for Summary Judgment is granted in part and denied in part. Although judgment is entered in Defendants' favor on Plaintiffs' claims brought under the Restatement (Second) of Torts § 343 because Defendants did not have notice of the dangerous condition, genuine issues of material fact remain in Plaintiffs' claims for negligence under the Restatement (Second) of Torts § 344 against these Defendants. Because Plaintiff Aida Torres's claim for negligence remains against these Defendants, Plaintiff Edwin Torres's claim for loss of consortium also remains against Defendants Lincoln Plaza Associates and Control Building Services.